# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

ABBAS VAKILI and
PARVIN VAKILI,

    Plaintiffs,

    vs.

WELLS FARGO HOME MORTGAGE, INC.

    Defendant.

\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*

CV 212-104

## ORDER

Presently before the Court is Defendant's Motion for Summary Judgment. See Dkt. No. 29. Upon due consideration, Defendant's motion is **GRANTED IN PART** and **DENIED IN PART**.

## I. FACTUAL BACKGROUND

This action is predicated on Defendant's allegedly wrongful foreclosure of Plaintiffs' property and allegedly wrongful eviction of Plaintiffs' from that property. See Dkt. Nos. 1-1, 24. The relevant facts are taken principally from the parties' Statements of Material Facts and responses thereto. See Dkt. Nos. 29-1, 32, 34, 38-7. Where the parties offer conflicting

1

accounts of the events in question, this Court draws all inferences and presents all evidence in the light most favorable to Plaintiffs. See Hamilton v. Southland Christian Sch., Inc., 680 F.3d 1316, 1318 (11th Cir. 2012) (citing Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011)).

In 2003, Defendant loaned Plaintiffs one million dollars to purchase the property which is the subject of this suit ("Property"). Plaintiffs executed a promissory note ("Note") in favor of Defendant. See Dkt. No. 29-8. Plaintiffs also executed a security deed ("Security Deed") that conveyed a security interest in the Property as collateral for the Note. The Security Deed gave Defendant a Power of Sale upon default on the Note. See Dkt. No. 29-9. The Security Deed also defined Defendant's rights if the Property was sold pursuant to the Power of Sale. Specifically, the Security Deed stated

> [Plaintiffs] . . . shall immediately surrender possession of the Property to the purchaser at the [foreclosure] sale. If possession is not surrendered, [Plaintiffs] . . . shall be [] tenant[s] holding over and may be dispossessed in accordance with Applicable Law.

See id. ¶ 22. The Security Deed also gave Defendant the power to secure the Property if Plaintiffs failed to comply with the

2

terms of the Security Deed or if Plaintiffs abandoned the Property. Specifically, the Security Deed stated

> If . . . [Plaintiffs have] abandoned the Property, then [Defendant] may do and pay for whatever is reasonable or appropriate to protect [Defendant's] interest in the Property and rights under [the Security Deed], including . . . securing and/or repairing the Property.

See id. ¶ 9(c).

Michael Roberts ("Roberts") was a licensed real estate agent and broker. Dkt. No. 29-1 ¶ 8. He was an authorized Real Estate Owned ("REO") Agent of Defendant's REO properties (i.e., post-foreclosure, bank-owned properties). Id.

In approximately 2011, Plaintiffs had difficulty making their mortgage payments and defaulted on the Note. Id. ¶ 4; Dkt. No. 32 ¶ 4. Pursuant to the "Making Home Affordable Program,"[1] Plaintiffs twice applied for a loan modification from Defendant. Dkt. Nos. 29-1 ¶ 9; 32 ¶ 9. Plaintiffs provided all materials that Defendant requested to evaluate Plaintiffs' loan modification application. Dkt. No. 34 ¶ 3. Defendant denied

---

[1] The "Making Home Affordable Program" is part of the Home Affordable Modification Program ("HAMP"). HAMP was authorized by Congress as part of the Emergency Economic Stabilization Act of 2008, see 12 U.S.C. § 5219a(a), which has the stated purpose of giving the Secretary of the Treasury the "authority and facilities" necessary "to restore liquidity and stability to the financial system of the United States." 12 U.S.C. § 5201(1).

Plaintiffs' requests in writing on November 9, 2011 and February 23, 2012. Dkt. Nos. 29-1 ¶ 10; 32 ¶ 10. Defendant did not make a written offer to modify the loan or to postpone the foreclosure sale. Dkt. Nos. 29-1 ¶¶ 24-25; 32 ¶¶ 24-25.

On March 1, 2012, Defendant sent Plaintiffs foreclosure notices that advised Plaintiffs (1) that they were in default, (2) that Defendant elected to accelerate the sums due under the Note, (3) the total amount due, and (4) that Plaintiffs had ten (10) days to pay the total amount due. The notices also advised Plaintiffs that a foreclosure sale would occur on April 3, 2012, if Defendant did not reinstate the loan. The notices also included copies of the foreclosure advertisements that would be published in the appropriate legal organ in anticipation of the foreclosure sale.

On April 3, 2012, Defendant foreclosed on the Property. Dkt. No. 29-1 ¶ 6. Thereafter, Roberts acted as Defendant's agent to secure the Property and prepare it for resale. Defendant did not file a dispossessory proceeding or obtain a writ of possession. Dkt. No. 34 ¶ 8. Nor did Defendant demand possession of the Property. Id. ¶ 10.

Between April 5 and April 9, 2012, Roberts conducted daily exterior inspections of the Property multiple times per day and

4

at various times each day. Dkt. No. 29-1 ¶ 11. During his visits to the Property, Roberts knocked on the exterior doors to try to reach any potential occupants. Id. No one answered. Id. He visited neighbors to ask if the property was occupied. Dkt. No. 29-1 ¶ 11. He saw no lights on in the home, even at night. Id. He peered through the unblocked windows and observed items that remained in the same place during each of his visits and that appeared to be broken and discarded. He observed an overgrown lawn. Id. He also observed a vehicle in the driveway that was not moved for multiple days and that was covered in a deep layer of pollen, including on and around the tires. Id. At no point did Roberts observe occupants or visitors entering or leaving the Property. Id. From these observations, Roberts concluded that the Property was abandoned. Id.

Contrary to Roberts's belief, Plaintiffs had not abandoned the Property. They simply had not visited it for as many as ten (10) days. Dkt. No. 29-3, at 42. The items within the Property appeared to be in disarray because Plaintiffs were in the process of organizing their home. See Dkt. No. 29-7. They sometimes slept at the Property. Dkt. No. 29-3, at 39-40.

5

However, at other times, they slept at a relative's house or at a hotel that they owned. Id.

On April 10, 2012, Roberts changed the locks on the Property and entered the Property. Dkt. No. 29-1 ¶¶ 12-13. Roberts discovered that the water and electricity services to the Property were disconnected. Id. ¶ 13. However, Plaintiffs had not disconnected these services. Dkt. No. 29-3, at 46-47. In fact, Plaintiffs allege that they continued to store food in the refrigerator. Dkt. No. 29-3, at 49. Once inside the Property, Roberts observed bare mattresses; piles of items in corners, on tables, and on desks; and clothes piled on the floor and on the furniture. Dkt. No. 29-1 ¶ 14.

On April 11, Plaintiffs discovered that Roberts had changed the locks on the Property. Id. ¶ 20. From April 11 to April 13, Plaintiffs stayed at a relative's home. Id. ¶ 21. They compensated the relative for using his home. Dkt. No. 29-3, at 44-45. On April 13, Roberts gave Plaintiffs keys to the new locks on the Property. Id. ¶ 15. Roberts did not enter the Property after April 13, 2012.

Plaintiffs are not aware of any professional complaints filed against Roberts. Id. ¶ 17.

After receiving keys to the Property, Plaintiffs allege that the Property had been "rummaged through." See Dkt. No. 34 ¶ 8. They also allege that some of their personal property was missing. Id. ¶ 11. Specifically, jewelry, a computer, personal papers, and thousands of dollars in cash were taken from the Property without Plaintiffs' knowledge or permission. Id. As a result of Defendant's actions, Plaintiffs allege that they suffered anxiety, embarrassment, and mental pain and suffering.

## II.  PROCEDURAL BACKGROUND

Plaintiffs filed this action in the Superior Court of Glynn County, Georgia. See Dkt. No. 1-1. The Superior Court enjoined Defendant from "interfering with Plaintiffs' peaceful possession of the [Property] and [Plaintiffs'] personal property therein until further hearing." See id. at 14-15. Subsequently, Defendant removed the action to this Court. See Dkt. No. 1. The Court granted Plaintiffs' request to amend their Complaint. See Dkt. No. 23. The Amended Complaint named Roberts as a co-defendant. See id. However, Roberts was subsequently dismissed from the case. See Dkt. No. 45.

Plaintiffs assert nine (9) causes of action. Specifically, Plaintiffs bring claims for (1) breaking and entering;

7

AO 72A
(Rev. 8/82)

(2) criminal trespass; (3) theft by conversion; (4) wrongful eviction; (5) trespass; (6) conversion; (7) intentional infliction of emotional distress; (8) wrongful foreclosure; and (9) negligence.  See Dkt. Nos. 1-1; 24; see also Dkt. No. 33, at 6, 9 (clarifying Plaintiffs' assertion of civil trespass and conversion claims).  Plaintiffs seek damages and attorney's fees.  See id.

Currently before the Court is Defendant's Motion for Summary Judgment on all claims.  See Dkt. No. 29.  This motion is fully briefed.  See Dkt. Nos. 33, 38.

## III. Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under the governing law."  FindWhat Investor Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  A dispute over such a fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.  In making this determination,

AO 72A
(Rev. 8/82)

the court is to view all of the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor.  Johnson v. Booker T. Washington Broad. Serv., Inc., 234 F.3d 501, 507 (11th Cir. 2000).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  To satisfy this burden, the movant must show the court that there is an absence of evidence to support the nonmoving party's case.  Id. at 325.  If the moving party discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist.  Anderson, 477 U.S. at 257.

## IV.  DISCUSSION

### A. Criminal Claims

Plaintiffs allege that the actions of Defendant's agent, Roberts, "constitute[d] Breaking and Entering, Criminal Trespass and Theft by Conversion."  See Dkt. No. 1-1 ¶ 6; see also id. ¶ 9.

AO 72A
(Rev. 8/82)

Plaintiffs lack standing to assert these criminal claims. In particular, "Georgia criminal statutes for trespassing and theft do not expressly provide for a civil remedy, and thus, a civil remedy cannot arise from a violation of these statutes." Goia v. CitiFinancial Auto, 499 F. App'x 930, 937 (11th Cir. 2012) (per curiam) (citing O.C.G.A. §§ 16-7-21 (criminal trespass), § 16-8-2 (theft by taking)); O.C.G.A. § 16-7-1 (burglary); see also Anthony v. Am. Gen. Fin. Servs., Inc., 697 S.E.2d 166, 171-72 (Ga. 2010) (providing that, where there is nothing in the provisions of the criminal statute creating a private cause of action in favor of the victim purportedly harmed by the violation of the penal statute, there is no private civil cause of action arising from the criminal statute). Because Plaintiffs lack standing to assert these criminal claims, Defendant's motion for summary judgment on Plaintiffs' claims of breaking and entering, criminal trespass, and theft by conversion is **GRANTED**.

## B. Wrongful Eviction

Plaintiffs allege that they were wrongfully evicted from the Property. See Dkt. No. 1-1 ¶ 7. Specifically, Plaintiffs allege that Defendant evicted them by "changing the locks on the

10

[Property] and depriving the Plaintiffs of access to the [Property] and their personal property located [] therein." <u>Id.</u> Defendant asserts that Plaintiffs abandoned the Property and that Plaintiffs suffered no damages. <u>See</u> Dkt. No. 29-2, at 9-12.

"Where former owners of real property remain in possession after a foreclosure sale, they become tenants at sufferance." <u>Steed v. Fed. Nat. Mortgage Corp.</u>, 689 S.E.2d 843, 848 (Ga. Ct. App. 2009). "The exclusive method whereby a landlord may evict a tenant is through a properly instituted dispossessory action filed pursuant to O.C.G.A. § 44-7-50 et seq." <u>Id.</u>

It is undisputed that Defendant did not institute dispossessory proceedings in accordance with O.C.G.A. § 44-7-50. Dkt. No. 34 ¶¶ 8, 10. Consequently, Defendant violated O.C.G.A. § 44-7-50 unless Plaintiffs abandoned the Property. <u>See</u> Dkt. No. 29-9 ¶ 9(c) (allowing Defendant to secure the Property upon Plaintiffs' abandonment).

An issue of fact exists as to whether Plaintiffs abandoned the Property. Roberts observed no use of the Property for four (4) or five (5) days. He also observed that the Property was in a general state of disarray and in a condition that is uncommon for a residence that is actively being used. However,

11

Plaintiffs maintain that they used the Property intermittently, that they lived in the property largely in the state that Roberts found it, that they mowed the lawn as-needed, that they kept food in the refrigerator, and that they never disconnected any utility services. Viewing the disputed facts in Plaintiffs' favor, Plaintiffs had not abandoned the Property.

Furthermore, Defendant concedes that Plaintiffs were locked out of the Property for three (3) days. See Dkt. No. 29-2. Plaintiffs stated that they stayed at a relative's house during this time and that they compensated that relative for the use of his home. Dkt. No. 29-3, at 44-45. Consequently, if Defendant wrongfully evicted Plaintiffs, the facts viewed in Plaintiffs' favor support the inference that Plaintiffs sustained damages as a result of that eviction.

An issue of fact exists as to whether Defendant wrongfully evicted Plaintiffs from the Property. Consequently, Defendant's motion for summary judgment on Plaintiffs' claim of wrongful eviction is **DENIED.**

C. Trespass

Plaintiffs allege that Defendant's actions constituted civil trespass. See Dkt. No. 1-1 ¶ 6; see also Dkt. No. 33, at

12

AO 72A
(Rev. 8/82)

6. "If the landlord evicts a tenant without filing a dispossessory action and obtaining a writ of possession, or without following the dispossessory procedures for handling the tenant's personal property, the landlord can be held liable for wrongful eviction and trespass." Ikomoni v. Executive Asset Mgmt., LLC, 709 S.E.2d 282, 286 (Ga. Ct. App. 2011) (citing Swift Loan & Fin. Co., Inc. v. Duncan, 394 S.E.2d 356 (Ga. Ct. App. 1990)); see also Duncan, 394 S.E.2d at 358 ("A landlord may not forcibly dispossess a tenant without subjecting himself to an action for trespass even if the tenant is holding over beyond his term, is in arrears in his rent, and has received legal notice to vacate.").

Viewing the facts in Plaintiffs' favor, a jury could conclude that Defendant wrongfully evicted Plaintiffs. See supra Part IV.B. By extension, a jury could conclude that Defendant's actions constituted trespass. See Duncan, 394 S.E.2d at 358. Consequently, Defendant's motion for summary judgment on Plaintiffs' trespass claim is **DENIED**.

D. Conversion

Plaintiffs allege that—by changing the locks on the Property—Defendant converted their personalty, in violation of

13

O.C.G.A § 51-10-1.  See Dkt. No. 1-1 ¶ 6; see also Dkt. No. 33, at 9.  O.C.G.A. § 51-10-1 provides that "[t]he owner of personalty is entitled to its possession."  "Any deprivation of such possession is a tort for which an action lies."  O.C.G.A. § 51-10-1.  In Georgia, "[c]onversion consists of an unauthorized assumption and exercise of the right of ownership over personal property belonging to another, in hostility to his rights; an act of dominion over the personal property of another inconsistent with his rights; or an unauthorized appropriation." Williams v. Nat'l Auto Sales, Inc., 651 S.E.2d 194, 197 (Ga. Ct. App. 2007) (citation omitted).  Where a person "comes into possession of the property unlawfully," he commits conversion if (1) another person had title to the property or the right of possession and (2) the alleged converter had actual possession of the property.  See Williams, 651 S.E.2d at 197 (noting that demand and refusal is not required where a person comes into possession of personalty unlawfully).

Viewing the facts in Plaintiffs' favor, a jury could conclude that Defendant wrongfully evicted Plaintiffs.  See supra Part IV.B.  By extension, a jury could conclude that Defendant's actions denied Plaintiffs access to their personalty for the time that the locks were changed until Defendant

14

provided Plaintiffs with a key to the Property. Thus, an issue of fact exists as to whether Defendant converted Plaintiffs' personalty during that time period. Consequently, Defendant's motion for summary judgment on Plaintiffs' conversion claim is **DENIED**.

## E. Intentional Infliction of Emotional Distress

Plaintiffs assert a claim for intentional infliction of emotional distress ("IIED"). See Dkt. No. 1-1 ¶ 8. Specifically, Plaintiffs allege that Defendant's actions "were done in a willful, wanton and reckless manner, thereby causing Plaintiffs to suffer extreme embarrassment and mental anguish." Id.

To prevail on an IIED claim, "a plaintiff must demonstrate that: (1) the conduct giving rise to the claim was intentional or reckless; (2) the conduct was extreme and outrageous; (3) the conduct caused emotional distress; and (4) the emotional distress was severe." Racette v. Bank of Am., N.A., 733 S.E.2d 457, 465 (Ga. Ct. App. 2012) (citations omitted). "The defendant's conduct must be so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."

15

Id. (citations omitted). "Whether a claim rises to the requisite level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress is a question of law." Id. (citations omitted).

Defendant's pursuit of a foreclosure sale despite knowing that Plaintiffs desired to modify their loan was not extreme or outrageous conduct. Defendant acted within its rights to foreclose after Plaintiffs failed to cure their default. See infra Part IV.F. Defendant's actions were routine, commercial business. The actions were not wrongful. Consequently, Defendant's actions were not extreme or outrageous.

Furthermore, entering the Property and changing the locks after reasonably attempting to discern occupancy was not extreme or outrageous conduct. First, Defendant attempted to act in accordance with its rights after the foreclosure sale. Second, Defendant's agent took many actions over multiple days to determine whether the Property was occupied. He visited the Property at varying times. He knocked on all of the exterior doors, peered through the windows, attempted to speak with neighbors, observed the overgrown lawn and unused vehicle, and observed no indication that items within the Property were moved or that the Property was otherwise being used. Entering the

16

Property and examining the personal property contained therein after taking precautions to ensure that the Property was abandoned was not extreme, outrageous, atrocious, or intolerable conduct. Consequently, Defendant's motion for summary judgment on Plaintiffs' IIED claim is **GRANTED**.

## F. Wrongful Foreclosure

Plaintiffs allege that Defendant wrongfully foreclosed on their Property. See Dkt. No. 24 ¶¶ 1-8. Specifically, Plaintiffs assert that Defendant acted in bad faith in refusing to modify Plaintiffs' loan.[2] Id. ¶ 8.

To recover on a wrongful foreclosure claim, a plaintiff must establish that (1) the defendant owed the plaintiff a legal duty, (2) the defendant breached that duty, (3) causation, and (4) damages. See Gregorakos v. Wells Fargo Nat. Ass'n, 647 S.E.2d 289, 292 (Ga. Ct. App. 2007). Plaintiffs have not alleged that Defendant breached any explicit contractual duty.

---

[2] Plaintiffs also asserted that Defendant violated the "Making Home Affordable Program and their duty to Plaintiffs" when it foreclosed on the Property without modifying the loan and without informing Plaintiffs of its decision not to modify the loan or its reasons for not doing so. Dkt. No. 24 ¶ 7. However, in their response brief, Plaintiffs concede that Defendant is entitled to summary judgment with respect to this claim because "the 'Home Affordable Mortgage Program' ("HAMP") does not provide [] a private right of action." See Dkt. No. 33, at 3.

AO 72A
(Rev. 8/82)

Consequently, unless Defendant breached an implied duty, Defendant is entitled to summary judgment on Plaintiffs' wrongful foreclosure claim.

Georgia law implies a duty of good faith and fair dealing in all contracts. See Tommy McBride Realty, Inc. v. Nicholson, 648 S.E.2d 468, 470 (Ga. Ct. App. 2007); see also O.C.G.A. § 23-2-114 ("Powers of sale in deeds of trust, mortgages, and other instruments . . . shall be fairly exercised."). However, "there can be no breach of an implied covenant of good faith where a party to a contract has done what the provisions of the contract expressly give him the right to do." Ameris Bank v. Alliance Inv. & Mgmt. C., LLC, 739 S.E.2d 481, 486 (Ga. Ct. App. 2013); see e.g., Martin v. Hamilton State Bank, 723 S.E.2d 726, 727 (Ga. Ct. App. 2012) (affirming summary judgment for lender on claim of breach of the implied covenant of good faith and fair dealing based on lender's refusal to restructure the debt because, after borrower's default, lender had explicit right to declare default and pursue collection of debt).

After Plaintiffs failed to cure their default, Defendant exercised its express right under the Security Deed to invoke its Power of Sale and foreclose on the Property. In so doing, Defendant complied with the Security Deed's terms. Thus,

18

Plaintiffs' claim of breach of an implied covenant of good faith fails as a matter of law. See Ameris Bank, 739 S.E.2d at 486.

Defendant did not wrongfully foreclose on the Property. Nor did Defendant breach an implied duty of good faith with respect to the Note or Security Deed. Consequently, Defendant's motion for summary judgment on Plaintiffs' claim of wrongful foreclosure is **GRANTED**.

## G. Negligence

Plaintiffs allege that Defendant acted negligently. See Dkt. No. 24 ¶¶ 9-12. Specifically, Plaintiffs assert that "Defendant was negligent in hiring Roberts to go into [the Property] without adequate investigation of his professional credentials, without adequate instructions for his actions and without adequate supervision of his actions." Id. ¶ 11. Plaintiffs further assert that Defendant breached its duty "to safeguard [Plaintiffs'] property while it was in Defendant's control." Id. ¶ 12.

### 1. Negligent Hiring

Plaintiffs assert that Defendant negligently hired Roberts. An employer must "exercise ordinary care in the selection of

19

employees and [must] not [] retain them after knowledge of incompetency." O.C.G.A. § 34-7-20. Thus, "an employer may be liable for hiring or retaining an employee the employer knows[,] or in the course of ordinary care should have known[,] was not suited for the particular employment." Munroe v. Universal Health Servs., Inc., 596 S.E.2d 604, 605 (Ga. 2004) (footnote and citation omitted). Consequently, "an employer may be held liable only where there is sufficient evidence to establish that the employer reasonably knew or should have known of an employee's 'tendencies' to engage in certain behavior relevant to the injuries allegedly incurred by the plaintiff." Id. at 606.

The evidence does not support the inference that Defendant breached its duty when hiring Roberts. Specifically, Plaintiffs directed the Court to no evidence that Roberts was not suited to act as an REO agent. Nor have Plaintiffs directed the Court to any evidence that Defendant knew or should have known that Roberts was not suited to act as an REO agent. Without such evidence, Plaintiffs' claim of negligent hiring fails as a matter of law.

AO 72A
(Rev. 8/82)

2.  Negligent Supervision

Plaintiffs assert that Defendant negligently instructed and supervised Roberts.  "For an employer to be held liable for negligent supervision, there must be sufficient evidence to establish that the employer reasonably knew or should have known of an employee's tendencies to engage in certain behavior relevant to the injuries allegedly incurred by the plaintiff." Novare Grp., Inc. v. Sarif, 718 S.E.2d 304, 309 (Ga. 2011) (citation and internal quotation marks omitted).

The evidence does not support the inference that Defendant breached its duty when instructing or supervising Roberts. Specifically, Plaintiffs directed the Court to no evidence that Roberts had a tendency to mistakenly enter properties that were not abandoned.  Nor have Plaintiffs directed the Court to any evidence that Defendant knew or should have known that Roberts had such a tendency.  Without such evidence, Plaintiffs' claims of negligent instruction and supervision fail as a matter of law.

3.  Negligent Safeguarding

Plaintiffs assert that Defendant failed to safeguard their Property.  To state a cause of action for negligence, a

21

AO 72A
(Rev. 8/82)

plaintiff must establish: "(1) a legal duty; (2) a breach of [that] duty; (3) an injury; and (4) a causal connection between the breach and the injury." R & R Insulation Servs., Inc. v. Royal Indem. Co., 705 S.E.2d 223, 232 (Ga. Ct. App. 2010) (citing Dozier Crane & Mach. v. Gibson, 644 S.E.2d 333 (Ga. Ct. App. 2007)).

Plaintiffs failed to articulate a source for Defendant's alleged duty to safeguard their property. Without a legal duty, Plaintiffs' claim of negligent safeguarding the Property fails as a matter of law.

### 4. Conclusion

Even construing the facts in Plaintiffs' favor, the evidence does not support the elements of Plaintiffs' negligence claims. Consequently, Defendant's motion for summary judgment on Plaintiffs' negligence claims is **GRANTED**.

## V. CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**. Dkt. No. 29. Defendant's motion is **GRANTED** with respect to the claims for breaking and entering, criminal trespass, theft by

22

conversion, intentional infliction of emotional distress, wrongful foreclosure, and negligence. Defendant's motion is **DENIED** with respect to the claims for wrongful eviction, civil trespass, and civil conversion.

   **SO ORDERED**, this 24th day of July, 2013.

LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)